UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAMYKA SOLOMON,

    Plaintiff,

v.                             Case No.: 8:23-cv-364-NHA

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security

    Defendant.
_____/

## **ORDER**

Plaintiff Shamyka Solomon asks the Court to reverse Defendant's determination that she is not disabled and therefore not entitled to supplemental security income ("SSI"). Ms. Solomon argues that the Administrative Law Judge ("ALJ") erred by finding that she had an affective disorder but not finding that her ability to work was limited by it. After reviewing the parties' briefing and the record below, I affirm the ALJ's determination that Ms. Solomon is not disabled.

### I.  Procedural History

Ms. Solomon, who was born in 1978, has a GED and worked as a cashier until April 2005. R. 218, 32. Ms. Solomon applied for disability benefits in 2005 and 2019. R. 82. The Commissioner denied both claims. *Id.* Then, on April 9,

2020, Ms. Solomon applied for SSI; the Court considers the ruling on her SSI application here.

In applying for SSI, Ms. Solomon first claimed she became disabled on December 26, 2019. R. 199. Later, she amended the claim, asserting she became disabled on April 9, 2020. R. 322. She alleged her disability resulted from pain in her cervical spine, migraines, disc discectomy, arthritis, osteoporosis, asthma, spine injury, neck injury, and back injury. R. 217. Her application did not allege that she suffered from any mental or emotional condition. R. 217.

Ms. Solomon's SSI application was denied both initially (R. 114) and on reconsideration (R. 21). Ms. Solomon then filed a written request for a hearing, which was granted. R. 21. Following the hearing, the ALJ found that Ms. Solomon was not disabled and therefore not entitled to SSI. R. 21-34.

In reaching this conclusion, the ALJ used the Social Security Regulations' five-step, sequential evaluation process. R. 22-23. That process analyzes:

1) Whether the claimant is currently engaged in substantial gainful activity. If so, she is not disabled;

2) If not, whether the claimant has a severe impairment or combination of impairments. If not, the claimant is not disabled;

3) If so, whether any impairments meet or equal the severity of the

specified impairments in the Listing of Impairments. If so, the claimant is disabled;

4) If no impairments meet or equal that severity, whether, based on a residual functional capacity ("RFC") assessment, the claimant can perform any of his or her past relevant work despite the impairments. If so, the claimant is not disabled; and

5) If not, whether there are a significant number of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled.

20 C.F.R. §§ 416.920(a)(4)(i)-(v).

Following the hearing, the ALJ concluded that:

1) Ms. Solomon had not engaged in substantial gainful activity since April 9, 2020, the amended alleged onset date. R. 24.

2) Ms. Solomon did have severe impairments, specifically: a spinal disorder, asthma, migraines, osteoarthritis of the knee, obesity, and right-hand carpal tunnel syndrome. *Id.* The ALJ also found that Ms. Solomon suffered from non-severe affective disorder that "d[id] not cause more than minimal limitations of [Ms. Solomon's]. . . mental ability to do basic work activities." R. 24-26. Specifically, in evaluating her affective disorder, the ALJ found that Ms. Solomon

3

was mildly limited in understanding, remembering, or applying information (R. 24); in interacting independently, appropriately, effectively, and on a sustained basis with other people (R. 24-25); in sustaining focus, attention, and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings (*id.*); and in "adapting or managing oneself" (R. 25).

3) Ms. Solomon did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 26.

4) Ms. Solomon's RFC allowed her to perform sedentary work as defined in 20 C.F.R. § 416.967(a): she could push and pull with her right upper extremity and occasionally with her left upper extremity. She could occasionally kneel, stoop, bend, balance, crawl and climb ramps and stairs, and reach overhead, and she could frequently reach in all other directions and handle finer objects bilaterally. R. 28. With these limitations, Ms. Solomon could not perform any of her past relevant work. R. 32.

5) Ms. Solomon could, however, perform the jobs of document preparer, sorter, and food checker, and a sufficient number of these jobs were available in the national economy. R. 33. Ms. Solomon was,

4

therefore, not disabled.

Following the ALJ's ruling, Ms. Solomon requested review from the Appeals Counsel, which denied her request on May 27, 2022. R. 1. She then timely filed a complaint with this Court. Doc. 1. Ms. Solomon argues it was error for the ALJ to find that she had affective disorder and to find that the disorder imposed mild limitations on some of her cognitive functions (R. 24-25), but then to not incorporate those limitations into her RFC. Doc. 20, p. 3.

Ms. Solomon filed a brief opposing the Commissioner's decision (Doc. 20) and the Commissioner responded (Doc. 21). Ms. Solomon did not file a reply to the Commissioner's response and her time to do so has passed. The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   Records Relating to Ms. Solomon's Mental Health

Ms. Solomon's medical records indicate no history of mental or emotional impairments. R. 951, 982, 1010, 1129, 1136, 2107, 2090, 2115. Ms. Solomon was seen by a physician at AdventHealth Tampa in June 2021. R. 2090. The physician reported that Ms. Solomon was "negative" for anxiety and mood disturbance, meaning that, Ms. Solomon did not have anxiety or mood disturbance in her prior medical history. R. 2090.

Ms. Solomon "did not list anxiety disorders or depression as barriers to employment" on her initial application for SSI. R. 25 (citing R. 217). In the hearing on her application for SSI, Ms. Solomon was asked whether she had

5

ever suffered from any mental or emotional conditions. R. 62. Ms. Solomon initially responded, "No. Just as a adolescent." R. 62. When pressed about whether she had difficulty interacting with others, Ms. Solomon testified that others might get aggravated with her because she had memory gaps and because "I get depressed," citing her mother's passing away in 2018 and "just a bunch of other stuff" as the reason for that "depress[ion]." R. 62-63.

While Ms. Solomon alleged significant problems with attention, concentration, and short-term memory (none of which Ms. Solomon attributed to an affective disorder), the progress notes of treating physicians did not describe significant cognitive abnormalities. R. 24-25.

### III. Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

6

(2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for his decision with enough clarity to enable the Court to conduct meaningful review of the standards he employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Id.*; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

Even if a Court finds that an ALJ has erred, "an incorrect application of the regulations will result in a harmless error if a correct application of the

7

regulations would not contradict the ALJ's ultimate findings." *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If "remand would be an idle and useless formality," a reviewing court is not required to "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

### IV.  Analysis

The ALJ found that Ms. Solomon had an affective disorder and that the disorder imposed mild mental limitations. Ms. Solomon alleges that the ALJ committed reversable error by not incorporating any mental limitations into her RFC.

In Steps Two and Three, the ALJ must evaluate Plaintiff's mental impairments using the Psychiatric Review Technique ("PRT"). 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ rates the severity of a mental impairment's impact on a claimant's ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).

After finding that Ms. Solomon had an affective disorder, the ALJ evaluated its impact using the PRT and found that Ms. Solomon had a mild

limitations in all relevant categories. R. 24-25.

Social Security regulations define as "mild" an impairment that is not severe, i.e., does not create any more than a "minimal limitation in [the claimant's] ability to do basic work activities"; mild is the lowest possible severity. 20 C.F.R. § 404.1520a(d)(1)). Here, the ALJ stated that because "the evidence does not otherwise indicate there is more than a minimal limitation in [Ms. Solomon's] ability to do basic work activities, [her mental impairments were] nonsevere."

"The burden rests with the claimant . . . to show that [s]he has a severe impairment or combination of impairments." *Schink v. Commissioner of Social Security*, 935 F.3d 1245, 1265 (2019). An "impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Ms. Solomon does not contest that any affective disorder would be not severe, that is, that it "would clearly not be expected to interfere with the individual's ability to work." The record supports this finding. Ms. Solomon's medical records do not reflect the disorder, she did not seek treatment for such a disorder, and Ms. Solomon herself did not claim to have the disorder or that any such disorder impeded her ability to work in any way. R. 217, 951, 982, 1010, 1129, 1136, 2107, 2090, 2115.

Now, on appeal, Ms. Solomon seeks a remand directing the ALJ to incorporate limitations from an affective disorder into her RFC. The RFC is the most that a claimant "can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ makes this determination by considering a claimant's physical, mental, and other abilities in light of all her impairments. *Schink*, 935 F.3d at 1268 (citing 20 C.F.R. § 404.1545(b)-(d)). "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Regulation (SSR) 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). A non-severe impairment "may not significantly limit an individual's ability to do basic work activities," but "it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id.*

The evaluation of the severity of limitations imposed by mental health conditions—the PRT analysis at Steps Two and Three—where the ALJ found Ms. Solomon's affective disorder to be non-severe and to cause mild limitations in her cognitive functioning, is a distinct process from the RFC determination in Step Four. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3); *Winschel*, 631 F.3d at 1180. Nonetheless, the Eleventh Circuit has held that an ALJ should not ignore his PRT findings during his RFC analysis. *Id.* at 1181. Rather, the ALJ must "indicate that medical evidence suggested [a claimant's] ability to work was unaffected by [the] limitation [identified in the PRT findings] or "otherwise

10

. . . account for the limitation in the hypothetical [to the VE]." *Id.*

Here, the ALJ stated that her "residual functional capacity assessment reflect[ed] the degree of limitation" she found in her PRT analysis. R. 25. She also expressly stated, during the PRT analysis, that Ms. Solomon's "affective disorder, considered singly and in combination, does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." R. 24.

The Court notes that the ALJ's RFC analysis did not expressly discuss mental limitations or adopt the limitations posed in any question to the VE which incorporated mental limitations. R. 68-73. But, even if it were error for the ALJ not to re-state more expressly in her RFC determination her finding that any mild mental limitations did not affect Ms. Solomon's ability to work, such error would be harmless. That is because "a correct application of the regulations would not contradict the ALJ's ultimate findings." *Denomme*, 518 F. App'x at 877-78.

Ms. Solomon's medical records contain no evidence that Ms. Solomon ever complained of, was diagnosed with, or sought or received treatment for affective disorder. In the proceedings below, Ms. Solomon did not claim to have such an ailment or that such an ailment impacted her ability to work in any way. Thus, there is no evidence that "a reasonable person would accept as adequate to support [the] conclusion," that affective disorder limited Ms.

11

Solomon's ability to work. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

For this reason, any remand directing the ALJ to state more expressly in his RFC analysis whether Ms. Solomon's affective disorder limited her ability to work would necessarily result in the same findings: the disorder does not impact Ms. Solomon's ability to work, and she is not disabled. Because the only supportable outcome of a remand is the one already reached here, "remand would be an idle and useless formality." *See N.L.R.B.*, 394 U.S. at 766 n.6.

### V. Conclusion

Accordingly:

(1) The conclusion of the Commissioner's decision below is AFFIRMED.

(2) The Clerk of Court shall enter judgment in the Defendant's favor, terminate any pending motions, and close the case.

ORDERED on March 19, 2024.

NATALIE HIRT ADAMS
United States Magistrate Judge